UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ULTRABULK CARGO SERVICES GmbH                    CIVIL ACTION

VERSUS                                           NO. 26-1625

MV AM PURPOSE, IMO No. 9455387, her             SECTION M (3)
engines, boilers, tackle, etc., *in rem*, and AM
PURPOSE LIMITED, *in personam*

## ORDER & REASONS

Before the Court is a motion to vacate warrant of arrest filed by defendant Am Purpose

Limited ("Am Purpose").[1]  Plaintiff Ultrabulk Cargo Services GmbH ("Ultrabulk") responds in

opposition.[2]  The Court conducted a hearing on the motion on August 4, 2026, at which it ordered

supplemental briefing from both parties.  Thereafter, the parties submitted supplemental

memoranda in support of their respective positions.[3]  Having considered the parties' memoranda,

the record, and the applicable law, the Court grants the motion to vacate the warrant of arrest.

## I.    BACKGROUND

This is a maritime action arising out of an alleged breach of a charter party agreement.[4]

According to Ultrabulk's complaint, Ultrabulk entered into a charter party agreement (the

"Agreement") with Am Purpose on or about March 5, 2026, for lease of its vessel, the M/V *Am

Purpose* (IMO No. 9455387).[5]  The Agreement required Am Purpose to deliver the *Am Purpose*

in a seaworthy condition, to exercise due diligence in her maintenance prior to and at the

commencement of each voyage, to have in place all of the vessel documentation to permit the

---

[1] R. Doc. 18.
[2] R. Doc. 26.
[3] R. Doc. 35 (Am Purpose's supplemental memorandum); 36 (Ultrabulk's supplemental memorandum).
[4] *See* R. Doc. 1 at 3-4.
[5] *Id.* at 2-3.

vessel to trade within the agreed limits, and to be responsible for certain port charges when the vessel is put into port for reasons attributable to the vessel.[6]  The Agreement also permitted Ultrabulk to place the vessel off-hire and recover damages for its loss of use, as well as related expenses, which might arise from any repeated breakdowns or other deficiencies during the charter period.[7]  Finally, the Agreement specifies that any disputes arising out of the Agreement will be governed by English law and subject to arbitration in London.[8]

The Agreement ran from March 8, 2026, to July 9, 2026, during which time Ultrabulk planned to make two voyages with the *Am Purpose* – one from Turkey to Georgetown, Guyana, and another from Baltimore (later New Haven) to Iskenderun, Turkey.[9]  But Ultrabulk says it experienced a plethora of issues with the *Am Purpose*, including a significant amount of off-hire time, several cargo gear and equipment breakdowns, an eight-day-long generator and crane breakdown, delays caused by missing documentation, and detention by the U.S. Coast Guard.[10] Ultrabulk never made its second planned voyage with the *Am Purpose* and, to mitigate its loss, arranged for a substitute vessel, the M/V *Ultra Bosque*.[11]

On July 23, 2026, Ultrabulk filed a verified complaint against Am Purpose and the *Am Purpose*, asserting claims for breach of maritime contract, *in rem* maritime lien and vessel arrest, and *in personam* maritime attachment.[12]  Ultrabulk, in conjunction with its verified complaint, filed an *ex parte* motion for an order directing issuance of a warrant *in rem* for arrest of the M/V *Am Purpose* pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims (the

---

[6] *Id.* at 3-4.
[7] *Id.* at 4.
[8] R. Doc. 1-1 at 28.
[9] *See* R. Doc. 1 at 5-6.
[10] *Id.* at 4-7.
[11] *Id.* at 7-8.
[12] *Id.* at 8-10.

"Supplemental Rules").[13]  The Court granted Ultrabulk's motion and issued the warrant pursuant to Rule C on the same day, July 23.[14]  On July 28, 2026, Ultrabulk moved for issuance of process of maritime writ of attachment and garnishment pursuant to Rule B of the Supplemental Rules, seeking to attach the property of defendant Am Purpose – including, but not limited to, its vessel, the *Am Purpose*.[15]  The next day, the Court granted the motion and the writ of attachment was issued.[16]

Am Purpose moved to vacate the arrest of the vessel under Rule C of the Supplemental Rules[17] and, separately, to set security for release of the vessel in connection with its attachment under Rule B.[18]  The Court scheduled hearing on both motions for August 5, 2026, at which it ordered supplemental briefing on Am Purpose's motion to vacate the warrant of arrest – specifically, the issue of whether a maritime lien (a necessary precursor to a Rule C arrest) arises under English law in connection with the types of claims Ultrabulk asserts – and took the issue under advisement.  The Court did, however, rule on Am Purpose's motion to set security soon after the hearing,[19] and the parties represent that the vessel has been released pursuant to Am Purpose's furnishing of a letter of undertaking.[20]

## II.    PENDING MOTION

Am Purpose, in its motion to vacate the warrant of arrest, argues that Ultrabulk has no maritime lien against the *Am Purpose*, and thus no right to arrest the vessel, because the charter party between the parties is governed by English law which does not provide for a maritime lien

---

[13] R. Doc. 3.
[14] R. Docs. 5 (order granting motion for issuance of warrant); 6 (warrant of arrest).
[15] R. Doc. 13.
[16] R. Docs. 14 (order granting the motion for issuance of writ of attachment and garnishment); 15 (writ of attachment).
[17] R. Doc. 18.
[18] R. Doc. 22.
[19] R. Doc. 32.
[20] R. Doc. 34.

in breach-of-contract actions.[21]  In support of its position, Am Purpose submits a declaration from English solicitor David Morriss who attests specifically that maritime liens under English law attach to only five categories of claims: bottomry and respondentia; damage done by a ship; salvage; seamen's wages; and masters' wages and disbursements.[22]  Because a vessel cannot be arrested pursuant to Supplemental Rule C(1)(a) where there is no valid maritime lien against the vessel, Am Purpose urges that the warrant of arrest must be vacated.[23]

Ultrabulk responds that Am Purpose's motion is both moot and irrelevant because the *Am Purpose* was held under both Rule B attachment and Rule C arrest.[24]  Because Am Purpose does not challenge the Rule B attachment, says Ultrabulk, the motion is moot.[25]  Alternatively, Ultrabulk agrees that English law applies but disagrees that it precludes a Rule C arrest of the vessel.[26]  In particular, Ultrabulk says that, under English law, "a charterer has an *in rem* claim against a vessel and can arrest the vessel under the admiralty jurisdiction on the basis of a statutory lien."[27]  Citing the declaration of its own English solicitor, Alessio Sbraga, Ultrabulk asserts that such a claim for statutory lien "arises from the use or hire of the vessel under a maritime contract to which the owner of said vessel was a party and was in possession or control of said vessel when the cause of action arose."[28]  Ultrabulk goes on to represent that, under English law, the statutory lien claim permits the claimant to arrest the vessel as security.[29]  Although English law recognizes a statutory lien rather than a maritime lien, which is the prerequisite for Rule C arrest in the United States, Ultrabulk argues that the *Am Purpose* could be arrested in either country if the vessel were

---

[21] R. Doc. 18-1 at 2.
[22] R. Doc. 18-2 at 2.
[23] R. Doc. 18-1 at 2-3.
[24] R. Doc. 26 at 2-3.
[25] *Id.*
[26] *Id.* at 3-4.
[27] *Id.* at 3.
[28] *Id.* (citing R. Doc. 26-1).
[29] *Id.* at 4.

located there and that country's procedural and substantive law applied.[30]  Thus, says Ultrabulk, it would be "a legal and equitable absurdity" to disallow arrest of a vessel in the United States just because substantive English law applies, when the vessel could be arrested in England if located there.[31]

Am Purpose, in its supplemental memorandum, says that "U.S. courts have uniformly held that a statutory right *in rem* under English law does not entitle the claimant to arrest a vessel in the U.S. under Supplemental Rule C."[32]  In support, it points primarily to *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983 (5th Cir. 1992), in which the Fifth Circuit found that a party who had a statutory right of action *in rem* under Singapore law had a fundamentally different right than a party who held a maritime lien, after observing that "[i]n all aspects relevant here, Singapore law and English law are the same."  *Id.* at 988.  And, said the court, a statutory right of action *in rem* alone is insufficient to support an arrest under Rule C (although attachment pursuant to Rule B remained available to the claimant).  *Id.* at 988-89.  Am Purpose identifies several other cases in which federal courts have held that statutory rights *in rem* under English law do not support Rule C arrests.[33]  Finally, says Am Purpose, any doubt should be resolved in its favor pursuant to the well-settled principle that maritime liens are to be strictly construed.[34]

---

[30] *Id.*

[31] *Id.*

[32] R. Doc. 35 at 1.

[33] *Id.* at 3-7 (citing *Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla*, 966 F.2d 613, 616-17 (11th Cir. 1992); *Bominflot, Inc. v. The M/V Henrich S*, 465 F.3d 144, 147 (4th Cir. 2006); *Bank of Am., N.A. v. M/V Marine Princess*, 600 F. Supp. 3d 663, 671-73 (E.D. La. 2022); *Cockett Marine Oil Ltd. v. M/V Lion*, 2011 WL 1833286, at *4 (E.D. La. May 12, 2011); *Marine Oil Trading Ltd. v. M/V Sea Charm*, 2003 WL 292309, at *7 (E.D. La. Feb. 10, 2003); *Bolongon v. M/V Nor Atl.*, 1999 WL 804070, at *3 (E.D. La. Oct. 5, 1999); *J.P. Provos Mar., S.A. v. M/V Agni*, 1999 WL 558151, at *4 (E.D. La. July 28, 1999); *Governor & Co. of Bank of Scot. v. Maria S.J.*, 1999 WL 130632, at *4 (E.D. La. Mar. 10, 1999); *N. End Oil, Ltd. v. M/V Ocean Confidence*, 777 F. Supp. 12, 14 (C.D. Cal. 1991); *Madredeus Shipping Co. v. Century Bridge Chartering Co.*, 2000 WL 1205336, at *3 (S.D. Fla. Feb. 11, 2000)).

[34] *Id.* at 5-6 (citing *Atl. & Gulf Stevedores, Inc. v. M/V Grand Loyalty*, 608 F.2d 197, 200-01 (5th Cir. 1979)).

In its supplemental memorandum, Ultrabulk first asserts again that this issue is moot since, now that Am Purpose has provided security for the vessel's release, the remaining disputes will be resolved through arbitration in London and "Ultrabulk intends to dismiss this litigation as soon as practicable."[35]  To the extent the issue is not moot, says Ultrabulk, it concedes that *Sembewang* is the controlling authority but, believing the result to be "legally incorrect and inequitable, … reserves the right to challenge a change in the law."[36]  Finally, Ultrabulk addresses a point raised at the hearing – that the issue is not moot, as the warrant of arrest pursuant to Rule C affects lien priority – by representing that there are presently no competing claims against the *Am Purpose*, which would make any ranking of claims or liens merely theoretical.[37]

## III.    LAW & ANALYSIS

Rule C of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims provides in part that:

> An action in rem may be brought:
>
> (a) To enforce any maritime lien;
>
> (b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.
>
> Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable.

Fed. R. Civ. P. Supp. Rule C(1).  Accordingly, Rule C's *in rem* remedy is generally available only where there is a valid maritime lien or where the laws of the United States provide for a statutory lien.  *See* 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 21:4 (7th ed. 2025); *Sembawang*, 955 F.2d at 987.  A court that, after review of a verified complaint, determines that the conditions for an *in rem* action appear to exist "must issue an order directing the clerk to issue

---

[35] R. Doc. 36 at 2.
[36] *Id.*
[37] *Id.* at 2-3.

a warrant for the arrest of the vessel or other property that is the subject of the action." Fed. R.

Civ. P. Supp. Rule C(3)(a)(1). Should a person claiming an interest in the vessel or property which

has been arrested pursuant to Rule C wish to have the arrest vacated, the burden is on the plaintiff

(*i.e.*, the party initiating the seizure) to show why the arrest or attachment should not be vacated.

*Id.* Rule E(4)(f). "To carry its burden, the arresting or attaching party must present sufficient

evidence to show that there were 'reasonable grounds' for attachment and that the arrest is

supported by 'probable cause.'" *Casillo Commodities Italia S.P.A. v. M/V Long Cheer*, 2017 WL

2804925, at *2 (E.D. La. June 28, 2017).

Both parties agree that English law applies to the instant dispute and that, under English

law, Ultrabulk's *in rem* claim is the result of a statutory lien rather than a maritime lien.[38] And

both parties agree that, under *Sembawang*, a Rule C arrest of the *Am Purpose* is unavailable to

Ultrabulk on the claims asserted in this action. But Ultrabulk takes the position that the issue is

moot and, alternatively, because the statutory lien would provide the remedy to arrest the *Am

Purpose* if the vessel were in English waters, this Court should grant an exception to Rule C's

requirement that actions *in rem* must arise from a valid maritime lien.

Notwithstanding the posting of security and the release of the vessel, the Court finds it

appropriate to rule on Am Purpose's motion to vacate given the clarity of the governing law, the

parties' apparent agreement on the controlling result, and the possibility of future claims or liens.

Specifically, the Fifth Circuit's decision in *Sembawang* squarely holds that a statutory right of

action *in rem* under Singapore law, which the court expressly found to be identical to English law

"[i]n all aspects relevant" to this analysis, does not satisfy the maritime lien requirement of

Supplemental Rule C. 955 F.2d at 988. And, importantly, Ultrabulk itself acknowledges that

---

[38] R. Docs. 18-2 at 6; 26-1 at 3.

7

*Sembawang* "appears to address the issue."[39]   The Court declines to depart from *Sembawang* simply because Ultrabulk "believes such a result is legally incorrect and inequitable."[40]   Thus, the Court concludes that the Rule C warrant of arrest should be vacated.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Am Purpose's motion to vacate arrest (R. Doc. 18) is GRANTED.

New Orleans, Louisiana, this 11th day of August, 2026.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[39] R. Doc. 36 at 2.
[40] *Id.*